## COWLES v. ARKANSAS & L. M. RY.

(District Court, W. D. Louisiana, Monroe Division. April 18, 1925.)

No. 74.

**1. Master and servant ⟲⟿69—Employees of railroad, not specifically mentioned in Director General's Order, held not entitled to additional compensation.**

Employees of railroad not specifically mentioned in Director General of Railroads' General Order No. 27 of May 5, 1918, or supplements thereto, prescribing wage scales for specified railroads, and "such other railroads as may be retained in federal control after July 1, 1918," *held* not entitled to additional compensation under such wage scales.

**2. Master and servant ⟲⟿69—Right of railroad employees to additional compensation must rest on law.**

Right of railroad employees to additional compensation prescribed by Director General of Railroads' General Order No. 27 of May 5, 1918, or supplements thereto, cannot be eked out by inference, but must rest on some law, which in terms or by fair implication imposes obligation on government through railroad.

**3. Master and servant ⟲⟿80(2)—Claims of railroad employees to additional compensation held not barred by two-year limitation.**

Claims of railroad employees to additional compensation prescribed by Director General of Railroads' General Order No. 27 of May 5, 1918, or supplements, asserted within two years of date when question of federal control of railroad was finally settled, were not barred by two-year limitation of Transportation Act 1920, § 206 (Comp. St. Ann. Supp. 1923, § 10071¼cc).

In Equity. Suit by Alfred Cowles against the Arkansas & Louisiana Midland Railway on claims of employees for back pay. On exceptions of no cause of action and prescription pleaded in bar. Exception of no cause of action sustained.

L. F. Grigsby and M. C. Redmond, both of Monroe, La., for claimants.

J. C. Theus, of Monroe, La., for receivers.

DAWKINS, District Judge. Employees of the defendant have filed in this proceeding their several claims against the receivers of the railway company for increased pay for their services for the six months period from January 1 to June 30, 1918, during which time it is contended the railroad was under government control. The claims asserted are based upon the scale of wages provided by General Order No. 27 of the Director General of Railroads, dated May 5, 1918, and supplements thereto. The receiver has filed an exception of no cause of action and pleaded the prescription of two years

under the federal Transportation Act of 1920, § 206 (41 Stat. 461 [Comp. St. Ann. Supp. 1923, § 10071¼cc]), in bar of these claims.

The question of whether or not the defendant railroad was ever under government control was a disputed one, which was first submitted to the board of referees provided by statute for determination of controversies of this kind, and which board decided the matter in favor of the railroad and against the contention of the government, holding that the defendant road was under federal control during the period referred to. However, the Director General refused to accept that award, and the railway company was forced to file suit in the Court of Claims for the purpose of having its rights determined under the acts of Congress providing compensation to the owners of railways while being used for war purposes. Thereafter the claim was adjusted and upon a settlement of accounts the defendant company was paid the sum of $25,000 in full compromise settlement.

No claim was made by the railway company against the government for the increased pay of its employees under General Order No. 27 in the proceeding just mentioned, but the claimants take the position that it was the railway company's duty to do so, and, having failed to discharge that duty, the defendant, through its receivers, must itself pay these claims.

The Railroad Administration during federal control allowed the railroads to be run for the use of the government by the same officers, agents, and employees as had been acting for their owners; they were required to account for moneys received, and were credited with expenses incurred through operation, in the settlements made at the end of government control, including the increased pay of employees allowed by the Director General under General Order No. 27. In other words, there was never any direct dealing with the employees in this particular, but their claims were made and met through the agencies just mentioned, to wit, the officers of the railroad companies, who were continued in charge for the purpose of operation. But the question of whether or not the defendant railroad had ever been under federal control, was, as above stated, a disputed one, and hence the managing officers did not pay these increases in the wages of said employees, for the reason, no doubt, that, until it could be determined whether the road was under government

control, no one could say whether General Order No. 27 had any application to defendant.

[1] However, the very basis upon which the claimants rely to support their claims for additional compensation is this same General Order No. 27, and at the threshold of the matter I am confronted with the proposition that, as originally promulgated, this order (that is, as to increased rates of pay) was made to apply to specifically named railroads, although provision was made therein for the addition of others which might be retained after July 1, 1918, the exact language of the order on this point reading as follows:

"Respecting the wages, hours, and other conditions of employment of the employees of the railroads hereinafter mentioned, it is hereby ordered:

"Article I—Railroads Affected.

"This order shall apply to the employees of the following railroads: [Then follows the names of the particular roads]. Such other railroads as may be retained in federal control on July 1, 1918, will be added to the foregoing list by order of the Director General. The Pullman Company, whose status is now being considered, will also be added by order to the foregoing list, if decision shall be reached to retain it in federal control."

Thereafter, by Supplement No. 3, dated July 3, 1918, "the following railroads are [were] hereby added to and made a part of article I of General Order No. 27" (then follows an additional list of specifically named roads); but nowhere, either in the original order itself, or in the supplements thereto, is found the name of the defendant company, nor have I been able to find any general provision (as to roads which were taken under federal control, but released after July 1, 1918), giving the employees of all railroads which had been taken over by the government the benefits of these increases. On the contrary, the action of the Director General rather indicates a clear purpose to include only those roads which were specifically named.

It is true that from time to time, after the release of certain of the railroads on July 1, 1918, being such as were found unnecessary for the prosecution of the war, supplemental orders in general terms, such as Supplement No. 15, were issued and have been held to apply to the employees of all railroads so retained, whether mentioned specifically among those listed in the original order itself or in Supplement No. 3. I think the reason for this ruling was that supplements like No. 15 were in such general terms as to include all railroads under federal control. For instance, Supplement No. 15, reads in part as follows: "Effective January 1, 1919, except as otherwise provided herein, as to employees herein named, the following rates of pay and rules for overtime and working conditions *upon railroads in federal operation* are hereby ordered. * * *" Clearly the intention in such cases was to include all employees of the class mentioned "upon railroads in federal operation."

[2] From an equitable standpoint, I think the employees of this railroad were as much entitled to this additional compensation during the period when the government had control as any other; yet the right cannot be eked out by inference, but must rest upon some law which in terms or by fair implication imposed the obligation upon the government through the railroads. However, as above stated, I have been unable to find any such provision. Counsel have cited and referred at length to the acts of Congress relating generally to adjustments and settlements with railroads involving the period of government control; but nowhere therein appears any provision which in my opinion has any bearing upon the peculiar facts of this case.

[3] In so far as the plea of prescription is concerned, I think the same is without merit, for the reason that the claimants had no standing to assert their rights until the question of federal control had been determined, and this was only finally settled by the compromise agreement. Thereafter, and well within the prescriptive period, their claims were filed.

For the reason assigned, I am of the view that the exception of no cause of action is well founded; and it is accordingly sustained.